UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x
RACEPOINT PARTNERS, LLC and
WILLOW CAPITAL-I, L.L.C.

                Plaintiffs,                <u>OPINION</u>

        -against-            06 Civ. 2500 (MGC)

JPMORGAN CHASE BANK,

                Defendant.
-------------------------------X
RACEPOINT PARTNERS, LLC and
WILLOW CAPITAL-II, L.L.C.

                Plaintiffs,

        -against-            06 Civ. 2501 (MGC)

JPMORGAN CHASE BANK,

                Defendant.
-------------------------------X

APPEARANCES:

        BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
        Attorneys for Plaintiffs
        54 West Hubbard Street
        Chicago, Illinois 60610

        By: James B. Heaton, III, Esq.

        1899 Wynkoop Street, 8th Floor
        Denver, Colorado 80202

        By: Joseph C. Smith, Jr., Esq.


        KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.
        Attorneys for Plaintiffs
        551 Fifth Avenue
        New York, New York 10176

        By: David Parker, Esq.

Sɪᴍᴘsᴏɴ Tʜᴀᴄʜᴇʀ & Bᴀʀᴛʟᴇᴛᴛ LLP
Attorneys for Defendant
425 Lexington Avenue
New York, NY 10017

By: David J. Woll, Esq.
    Thomas C. Rice, Esq.
    Janet A. Gochman, Esq.


**Cᴇᴅᴀʀʙᴀᴜᴍ, J.**

Defendant moves to dismiss plaintiffs' claims in these two related actions.  Both actions were removed from the Supreme Court of New York County.  Plaintiffs sue for breach of contract, breach of implied duty of good faith and fair dealing, and breach of fiduciary duty arising out of defendant's alleged failure to perform its duties as the indenture trustee for Enron notes issued in 1999 and 2001. Plaintiffs purchased the notes from their precedessor noteholders immediately prior to and following Enron's filing for bankruptcy in December 2001.  Defendant argues that plaintiffs' claims must be dismissed because plaintiffs are not entitled to assert the claims of their predecessor noteholders under N.Y. Gen. Oblig. Law § 13-107, and because they have otherwise failed to state a claim.

For the reasons that follow, the 06 Civ. 2501 action is remanded to the Supreme Court of New York County as improvidently removed.  As to the 06 Civ. 2500 action,

defendant's motion to dismiss is granted, but plaintiffs are given leave to conduct limited discovery on the applicability of New York law to their claims on the 1999 notes and to file an amended complaint by no later than December 29, 2006.

BACKGROUND

In the first action, 06 Civ. 2500, plaintiffs seek damages for defendant's alleged breach of its contractual obligations under a 1999 Enron Indenture.  Defendant's predecessor, The Chase Manhattan Bank, was the indenture trustee under an April 8, 1999 Indenture with Enron Corporation.  Complaint 06 Civ. 2500 ("Action I") ¶ 1. Enron raised 400 million euros pursuant to the 1999 Indenture by issuing 4.375% notes.  Id.  Enron defaulted on the 1999 Notes on or about December 2, 2001, when it filed for bankruptcy.  Plaintiffs currently hold notes in the principal amount of 177,128,000 euros.  Id.

In the second action, 06 Civ. 2501, plaintiffs seek damages for defendant's alleged breach of its contractual obligations under a 2001 Enron Indenture.  The Chase Manhattan Bank was also the indenture trustee under a February 7, 2001 Indenture with Enron.  Complaint 06 Civ. 2501 ("Action II") ¶ 1.  Enron raised $1.25 billion pursuant

to the 2001 Indenture by issuing zero coupon convertible notes.  Id.  Enron defaulted on the 2001 Notes on or about December 2, 2001.  Plaintiffs currently hold notes in the principal amount of $1,006,893,300.  Id.

The Complaints do not allege the dates on which plaintiffs purchased any of the notes at issue in these actions.  Nor do they allege the identities of the noteholders from whom plaintiffs purchased their notes.  However, in an opt-out request from a related class action currently pending in Texas, Newby v. Enron Corp., No. H-01-3624 (S.D. Tex.)(the "Newby action"), an affiliate of Willow Capital-I and Willow Capital-II asserts that it purchased the 4.375% notes now held by Willow Capital-I on November 29, 2001, three days before Enron filed for bankruptcy on December 2, 2001.  In a separate opt-out notice from the Newby action, plaintiff Racepoint Partners asserts that it purchased all of its notes after Enron's bankruptcy filing.  Counsel for plaintiffs reiterated at oral argument that plaintiffs acquired their notes at various times, starting a few days before the bankruptcy and continuing through 2002.  See 7/6/06 Hrg. Tr. at 17.

The Newby action, from which all plaintiffs have opted-out, is a nationwide securities class action that includes purchasers of the 2001 and 1999 Notes in the plaintiff

4

class.  JPMorgan Chase is also a defendant in the <u>Newby</u>
action.  The <u>Newby</u> class includes all of the predecessor
noteholders from whom plaintiffs purchased their notes,
except those who opted out of that class.  The <u>Newby</u>
plaintiffs assert only securities law claims; they do not
assert any common law claims for defendant's alleged breach
of its contractual obligations under the 1999 and 2001
Indentures.  On January 27, 2006, defendant entered into a
stipulation of settlement with the <u>Newby</u> plaintiffs.  The
settlement was preliminarily approved on February 22, 2006
and an order of final judgment and dismissal was entered on
May 24, 2006.

DISCUSSION

I. Federal Jurisdiction

The parties argue that the Edge Act, 12 U.S.C. § 632,
authorizes federal jurisdiction over both of these actions.
Defendant initially removed both actions to federal court
under Section 632 and on diversity of citizenship grounds,
but the parties later agreed at oral argument that there is
no diversity of citizenship in either action.  <u>See</u> 7/6/06
Hrg. Tr. at 7.  The parties maintain, however, that there is
federal jurisdiction over both of these actions under the
Edge Act.  Section 632 provides, in relevant part:

5

Notwithstanding any other provision of law, all
suits of a civil nature at common law or in equity
to which any corporation organized under the laws
of the United States shall be a party, arising out
of transactions involving international or foreign
banking, or banking in a dependency or insular
possession of the United States, or out of other
international or foreign financial operations,
either directly or through the agency, ownership,
or control of branches or local institutions in
dependencies or insular possessions of the United
States or in foreign countries, shall be deemed to
arise under the laws of the United States, and the
district courts of the United States shall have
original jurisdiction of all such suits; and any
defendant in any such suit may, at any time before
the trial thereof, remove such suits from a State
court into the district court of the United States
for the proper district by following the procedure
for the removal of causes otherwise provided by
law.

At oral argument, the parties agreed that defendant is
a "corporation organized under the laws of the United
States" for purposes of Section 632.  See 7/6/06 Hrg. Tr. at
8.  Thus, there is federal jurisdiction over these suits if
they arise out of "transactions involving international or
foreign banking" or out of "other international or foreign
financial operations."

The parties maintain that both suits arise out of
"other international or foreign financial operations"
because defendant's "actual knowledge" that Enron had
defaulted on its financial reporting obligations under the
Indentures is based, in part, on defendant's structuring of
a fraudulent financial transaction for Enron that involved

two foreign companies.  The transaction involved two
corporations, Mahonia Natural Gas Limited and Stoneville
Aegean Limited, which were formed and based on the island of
Jersey in the Channel Islands.  <u>See</u> Notice of Removal,
Action I ¶ 20; Notice of Removal, Action II ¶ 18.
Plaintiffs allege that defendant structured a sham
transaction between itself, Enron, and the two foreign
corporations in order to disguise a loan from defendant to
Enron as a prepaid commodity transaction.  This structuring
of the "secret loan" allowed Enron to report the proceeds
from the transaction as cash from operating activities
rather than as cash from financing activities.  The
plaintiffs contend that this transaction is evidence that
defendant had "actual knowledge" that Enron had submitted
fraudulent statements to the SEC and that Enron had thereby
defaulted on its financial reporting obligations.

     Plaintiffs' claims, however, do not "arise out" of
this single international transaction.  Plaintiffs' claims
are for breach of contract, breach of implied duty of good
faith and fair dealing, and breach of fiduciary duty.  The
duties that defendant allegedly breached arise out of the
1999 and 2001 Indenture Agreements.  <u>See</u> <u>Travis v. Nat'l</u>
<u>City Bank of N.Y.</u>, 23 F. Supp. 363, 365 (S.D.N.Y.
1938)(finding that in an action between a bondholder and a

trustee, the "'operations' forming the subject matter of this complaint are those inherent in and arising out of the trust indenture and in consequence relate to transactions between [the bond issuer] and the [trustee]").

Plaintiffs' claims arise out of the issuance of Enron notes in 1999 and 2001 pursuant to the Indenture Agreements. Section 632 provides for jurisdiction over plaintiffs' suits only if the issuance of these notes was an "international or foreign financial operation." The phrase "financial operations" in Section 632 is read according to its usual meaning. See Bank of Am. Corp. v. Lemgruber, 385 F. Supp. 2d 200, 215 n.13 (S.D.N.Y. 2005) (noting that the "common meaning" of "finance" is "to supply with funds through the issuance of stocks, bonds, notes or mortgages"); Stamm v. Barclays Bank of N.Y., 960 F. Supp. 724, 728 (S.D.N.Y. 1997)(noting that "financial operations" are "commonly understood as" those operations that "provide ... capital or loan money as needed to carry on business"). The issuance of the notes in 1999 and 2001 to raise funds for Enron was therefore a "financial operation" within the meaning of Section 632. See Travis, 23 F. Supp. at 366 (holding that creation of a trust indenture by a foreign corporation with a German corporation and an American corporation as trustees, which contemplates the sale and distribution of

the securities to American holders, is "an international
financial operation").

However, Section 632 requires that the "financial
operation" from which the suit arises be "international or
foreign."  The 1999 note issuance was an "international or
foreign" financial operation because the 1999 notes, unlike
the 2001 notes, were "eurobonds," notes for which the
principal and interest are paid in a foreign currency.  The
1999 notes were issued in face values denominated in euros
and were to be paid out in euros in London.  The 2001 notes,
in contrast, were issued in United States dollars.
Plaintiffs do not allege any foreign or international
involvement in the 2001 note issuance.  Section 632
therefore provides jurisdiction over the 1999 Notes action
but does not provide jurisdiction over the 2001 Notes
action.

    II.    Plaintiffs Do Not Allege Sufficient Facts to
           Determine Whether New York Law Applies or
           Whether their Transferrers Were Actually Injured
           by Defendant's Conduct

Plaintiffs' claim for breach of the 1999 Indenture
Agreement is based entirely upon any injury suffered by the
noteholders from whom they purchased the notes (i.e., their
"transferrers").  Plaintiffs do not allege that they

suffered any actual injury as a result of defendant's acts.
Instead, plaintiffs argue that the state contract claims of
their transferrers were automatically assigned to them by
N.Y. Gen. Oblig. Law § 13-107.  Section 13-107 provides:

> 1. Unless expressly reserved in writing, a
> transfer of any bond shall vest in the transferee
> all claims or demands of the transferrer, whether
> or not such claims or demands are known to exist,
> (a) for damages or rescission against the obligor
> on such bond, (b) for damages against the trustee
> or depositary under any indenture under which such
> bond was issued or outstanding, and (c) for
> damages against any guarantor of the obligation of
> such obligor, trustee or depositary.
>
> 2. As used in this section, "bond" shall mean and
> include any and all shares and interests in an
> issue of bonds, notes, debentures or other
> evidences of indebtedness of individuals,
> partnerships, associations or corporations,
> whether or not secured.
>
> 3. As used in this section, "indenture" means any
> mortgage, deed of trust, trust or other indenture,
> or similar instrument or agreement (including any
> supplement or amendment to any of the foregoing),
> under which bonds as herein defined are issued or
> outstanding, whether or not any property, real or
> personal, is, or is to be, pledged, mortgaged,
> assigned, or conveyed thereunder.

Section 13-107 does not require that a transferee
demonstrate that it was injured by defendant's conduct in
order to sue for damages.  Bluebird Partners, L.P. v. First
Fidelity Bank, N.A., 97 N.Y.2d 456, 460 (2002)("[N]either
the plain language nor the legislative history of General
Obligations Law § 13- 107 requires that a transferee

demonstrate its own injury in order to bring a claim for damages.").  To the knowledge of the parties, New York is the only state to have enacted such a provision for the automatic assignment of bondholders' claims.

> A.   Insufficient Facts to Determine that New York Law Governs Plaintiffs' Purchase of the Notes

Although the parties agree that New York choice of law rules govern the determination of which substantive law applies here, it is impossible to determine from the facts alleged in the Complaint whether New York choice of law rules would determine that New York substantive law (i.e., Section 13-107) applies to plaintiffs' claims.  Plaintiffs argue that they need further discovery in order to show that New York substantive law applies to plaintiffs' claims.

> B.   Insufficient Facts to Determine Whether the Predecessor Noteholders Were Injured by Defendant

Defendant also argues that, even if New York law allows plaintiffs to assert the contract claims of their transferrers, plaintiffs have failed to state a claim because they do not allege that their transferrers suffered any actual injury resulting from defendant's alleged breach of the Indenture Agreement.  Plaintiffs allege that

defendant breached the Indenture Agreement by failing to give notice to Enron that Enron had breached one of the indenture covenants and by then failing, after Enron did not cure the breach in 60 days, to declare that an "Event of Default" had occurred under the Indenture.  The Indenture Agreement provided that an "Event of Default" would occur if Enron breached any covenant or warranty in the Agreement and the breach continued for a period of 60 days after notice of the breach was given to Enron.  See 1999 Indenture Agreement at 55 (Condition 9: Events of Default).  One of the covenants in the Agreement was that Enron would provide defendant with a copy of its SEC filings.  See 1999 Indenture Agreement at 15 (Covenants by the Issuer, ¶ 13(i)).  Plaintiffs allege that Enron breached this covenant by filing intentionally fraudulent and materially misleading financial statements with the SEC.  Plaintiffs argue that under the Agreement, defendant was obligated to give notice of Enron's breach and, if Enron did not cure the breach in 60 days, to declare an "Event of Default."  If defendant had declared an "Event of Default," Enron's payment obligations on the notes would have been accelerated.

Defendant argues that plaintiffs' transferrers could only have been injured by defendant's failure to act if they bought their notes on or prior to October 4, 2001.

Defendant explains that a purchaser that bought its notes
<u>after</u> October 4 could not have been helped by any action
taken by defendant during the time that the purchaser held
the notes because, even if defendant had given Enron notice
of a default on the date that the purchaser bought the notes
(i.e., on October 5 or later), defendant could not have
declared an Event of Default and accelerated payment on the
notes until after the 60-day cure period expired, which
would have occurred after Enron had already filed for
bankruptcy.

Plaintiffs respond that they do not need to show that
their transferrers were actually injured by defendant's
conduct because plaintiffs are entitled to assert the claims
of all the noteholders who preceded them.  Plaintiffs
contend that the claims of all the prior noteholders were
assigned to them pursuant to Section 13-107 when they
purchased the notes.  Therefore, plaintiffs argue, they do
not need to allege that their transferrers were actually
injured by defendant's conduct because defendant's conduct
undoubtedly injured one or more of the noteholders who held
the notes prior to plaintiffs.

Plaintiffs do not, however, allege facts to show that
New York law governed every prior transfer of the notes at
issue in this case, such that their transferrers would have

automatically acquired the claims of all the previous noteholders through the operation of Section 13-107. Plaintiffs argue that they need further discovery in order to show that New York law governed all prior transfers of the notes.

Plaintiffs should therefore conduct discovery limited to the following issues: (a) whether all prior transfers of the 1999 notes that they purchased were governed by New York law, and (b) whether their transferrers purchased the notes on or prior to October 4, 2001.

CONCLUSION

For the foregoing reasons, defendant's motion to dismiss 06 Civ. 2500 is granted with leave to plaintiffs to amend the Complaint by no later than December 29, 2006, after discovery limited to the history of the prior transfers of the notes they hold.  As to 06 Civ. 2501, that action is remanded to the Supreme Court of New York County as improvidently removed and the Clerk is directed to send all papers to that Court.

Dated:    New York, New York
          October 26, 2006

                              S/_____
                                MIRIAM GOLDMAN CEDARBAUM
                                United States District Judge